## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

JOSEPH BROWN, LOUIS WEISBERG, and
STEPHANIE LOSSE,

        Plaintiffs,

        v.                        Case No. 17-cv-549

JEFFREY L. KEMP, CHARLES SIMONO,
MARK FRUEHAUF, ANGELINE E.
WINTON, KIMBERLY LAWTON, KELLY
MCKNIGHT, MARTHA MILANOWSKI,
WILLIAM NORINE, ANGELA L.
BERANEK, BRUCE R. POQUETTE,
MATTHEW TINGSTAD, and MICHAEL
NIESKES, in their official capacities as
District Attorneys of the State of Wisconsin,
SCOTT K. WALKER, in his official capacity
as Governor of the State of Wisconsin, BRAD
D. SCHIMEL, in his official capacity as
Attorney General of the State of Wisconsin,
CATHY L. STEPP, in her official capacity as
Secretary of the Wisconsin Department of
Natural Resources, and TODD A.
SCHALLER, in his official capacity as Chief
Warden of the Wisconsin Department of
Natural Resources,

        Defendants.

## COMPLAINT

    Plaintiffs Joseph Brown, Louis Weisberg, and Stephanie Losse ("Plaintiffs"), by their

undersigned attorneys, for their Complaint allege as follows:

### INTRODUCTION

    1.    When hunters, fishers, or trappers (collectively "hunters") are present on public

land in the State of Wisconsin, other users had better leave the area—not for fear of errant bullets

or hidden traps, but for fear of serious legal repercussions. Failure to leave could land non-hunters

in jail with a hefty fine, especially if they are simply monitoring the hunters' activity. This is the purpose and effect of Wis. Stat. § 29.083—to give hunters priority use of public lands and privacy to pursue their kills in peace. Beyond being patently unfair to non-hunters, Wis. Stat. § 29.083 is also unconstitutional in that it chills lawful expression in violation of the First Amendment. Filmmakers, journalists, and activists are among the non-hunters specifically injured by this statute. In fact, the current version of Wis. Stat. § 29.083 was enacted specifically to stifle the constitutionally protected activities of a single group known as Wolf Patrol.

2.      In addition to imposing egregiously unconstitutional restrictions on non-hunters, Wis. Stat. § 29.083 directly puts Wisconsin wildlife at risk of poaching and other illegal hunting tactics, since it keeps hunters out of the watchful eye of conservationists, animal activists, and the general public.

3.      The State of Wisconsin has historically regulated interference or attempts to interfere with lawful hunting, fishing, or trapping with the intent to prevent the taking of a wild animal. Until recently, the restrictions were limited to such things as harassing a wild animal, impeding or obstructing a person who is engaged in lawful hunting, fishing, or trapping, or an activity associated therewith (e.g., camping, travel, and other activity preparatory to lawful hunting, fishing, or trapping), or disturbing the personal property of such a person. Last year, however, Wisconsin expanded the list of prohibited activities significantly—and unconstitutionally.

4.      This lawsuit challenges the constitutionality of Wis. Stat. § 29.083 ("Interference with hunting, fishing or trapping"), specifically Wis. Stat. § 29.083(2)(a)(2), (3), (7), and (8). This law imposes criminal and civil penalties against anyone found "interfer[ing] or attempt[ing] to interfere with lawful hunting, fishing or trapping." The law has the purpose and effect of

suppressing the speech and expression of ideas of those opposed to hunting. It criminalizes a sweepingly broad and poorly defined set of actions.  Persons approaching a hunter, photographing or videotaping a hunter, or even "maintaining a visual or physical proximity" to a hunter are all subject to criminal prosecution and civil liability. This statute is facially overbroad, vague, and violates the First and Fourteenth Amendments of the U.S. Constitution on its face and as applied to the Plaintiffs.

5.    Plaintiffs request declaratory and injunctive relief to preserve their rights to record and disseminate information about hunting in Wisconsin and to engage in conduct necessary to be able to meaningfully express their anti-hunting beliefs. Specifically, Plaintiffs seek to stop the Wisconsin Legislature's attempt to suppress such expressive activity on the basis of content and viewpoint. To preserve such rights is the fundamental purpose of the First Amendment. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

6.    Specifically, Plaintiffs bring this action to (1) eliminate the imminent and credible threat of prosecution for engaging in protected expression now prohibited under Wis. Stat. § 29.083; and (2) to lift the chill on expression created by the statute, which has caused Plaintiffs to refrain from engaging in protected speech.

7.    Wis. Stat. § 29.083, as previously enacted and recently amended, is facially, and as applied to Plaintiffs, unconstitutional for several independent reasons: (1) it is an unconstitutionally overbroad restriction of speech in violation of the First Amendment; (2) it is an unconstitutionally vague restriction of speech in violation of the First and Fourteenth

Amendments; and (3) it is an impermissible content-based restriction that violates the First Amendment because it is not narrowly tailored to serve a compelling government interest.

8.      An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs contend that the challenged statute is unconstitutional. Defendants are duty-bound to prosecute alleged violations of Wis. Stat. § 29.083 or otherwise oversee the enforcement of the state's laws, which are presumed to be constitutionally valid absent a declaration from this Court. In addition, Plaintiffs face actual and threatened enforcement of the statute and are currently deterred from expressive activity by the statute in violation of their constitutional rights.

9.      Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

10.     Plaintiffs are further entitled to an injunction. Defendants are acting and threatening to act under color of state law to deprive Plaintiffs of their constitutional rights. Plaintiffs will suffer irreparable injury and will continue to suffer a real and immediate threat of irreparable injury as a result of the existence, operation, enforcement, and threat of enforcement of the challenged statute. Plaintiffs have no plain, adequate, or speedy remedy at law. Plaintiffs are refraining from constitutionally protected activities solely for fear of prosecution under the statute.

## JURISDICTION AND VENUE

11.     This action arises under the United States Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

12.     This Court has authority to grant the declaratory and injunctive relief requested pursuant to 28 U.S.C. §§ 2201 and 2202, along with Rules 57 and 65 of the Federal Rules of Civil Procedure.

13.     Venue is proper in this District because pursuit of this action in the United States District Court for the Western District of Wisconsin complies with 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

**Plaintiffs**

14.     Plaintiff Joseph Brown ("Professor Brown") is an adult resident of the State of Wisconsin. Professor Brown is Assistant Professor of Digital Media and Performing Arts at Marquette University in Milwaukee, Wisconsin. Professor Brown is also a filmmaker and blogger. He has made several documentary films on ecological issues. Recently, Professor Brown has been documenting the work of Wolf Patrol, a conservation movement founded on principles of bio-centrism and indigenous cultural preservation that supports the recovery of gray wolves in the lower 48 states and encourages a greater understanding of, and tolerance for, cultural worldviews that promote a harmonious co-existence with wolves and other predators. Professor Brown has been present on multiple occasions when hunters and law enforcement officers invoked the statute in an effort to chill Wolf Patrol's monitoring of various hunts. For instance, he once filmed law enforcement in Polk County, Wisconsin pull over members of Wolf Patrol and threaten them with a citation for violating Wis. Stat. § 29.083.

15.     Professor Brown wishes to continue to film Wolf Patrol's efforts and maintains a personal and professional interest in documenting hunter activity on any public land in Wisconsin. However, he will not continue to engage in such protected speech activity on state-managed public land due to his fear of civil and criminal liability under Wis. Stat. § 29.083. Rather, Professor Brown now purposefully limits his filming and documentary activity to federally-managed lands, where he perceives a lesser threat to his constitutional rights. He also engages in such activity only while on public roads, rather than filming and documenting hunting activity off-road as well.

5

Nevertheless, Professor Brown still faces the very real threat of criminal penalties for engaging even in his now-limited protected speech activity.

16.     Plaintiff Louis Weisberg ("Mr. Weisberg") is an adult resident of the State of Wisconsin.  Mr. Weisberg is the Publisher and Editor-in-Chief of the *Wisconsin Gazette*, a newspaper based in Milwaukee, Wisconsin. The *Wisconsin Gazette* aims to help build a strong, informed progressive community; to promote social equality and justice; to support immigration and electoral reform; to expose government secrets and to call out political corruption; to celebrate and to support the arts; and to foster appreciation and respect for Wisconsin's extraordinary natural resources—including wildlife.  Through his work at the *Gazette*, Mr. Weisberg has regularly disseminated information about and advocated on behalf of wolves and bears in Wisconsin.  In fact, the *Wisconsin Gazette* has long been Wisconsin wolf activists' go-to media outlet for garnering public attention on issues related to hunting and wildlife in the state.  Mr. Weisberg maintains an active and growing interest in documenting and reporting on hunter activity in Wisconsin.  To do this, Mr. Weisberg relies on information gathered by persons in the field. Because Wis. Stat. § 29.083 directly prohibits this type of firsthand field documentation, the statute has and will continue to have a chilling effect on Mr. Weisberg's primary sources, thereby chilling his ability to publish on the issues of his choosing. Moreover, to the extent Mr. Weisberg wishes to send journalists into the field to collect this information for him to report on, he also maintains a risk of prosecution because Wis. Stat. § 29.083(2)(7)(d) makes it a crime to "caus[e] a person to engage in any of the acts described [in the statute]."

17.     Plaintiff Stephanie Losse ("Ms. Losse") is an adult resident of the State of Wisconsin. Ms. Losse is an environmental and animal rights advocate who volunteers with Wolf Patrol. She witnesses hunter activity and takes photographs and video; she then uses this

documentary evidence to educate the public about the nature of wolf hunting in Wisconsin. As part of her work in Wisconsin, Ms. Losse has been stopped and questioned by law enforcement with other members of Wolf Patrol on public land. Hunters have stopped her while she was monitoring their activity on public land, invoking the statute to accuse her of "harassment." Hunters have called law enforcement officers to the scene, who advised Ms. Losse that she had violated Wis. Stat. § 29.083, for which she would receive a citation.

18.     Ms. Losse has always loved taking pictures. But now, before taking a photo on public land of hunters or hunting activity, she hesitates to wonder, "Will this picture get me arrested?" She desires to continue to monitor hunters as part of Wolf Patrol's efforts and maintains a significant interest in documenting hunter activity in Wisconsin. For that, Ms. Losse faces a threat of prosecution under the statute.

19.     Plaintiffs seek the right to be free of the unconstitutional restrictions of Wis. Stat. § 29.083 statewide. They are acutely concerned about the statute's limitations on their constitutional rights, particularly in those counties where they have historically sought to monitor hunting activities in Wisconsin (including Polk County, Forest County, Douglas County, Washburn County, Bayfield County, Ashland County, Vilas County, Burnett County, Barron County, Sawyer County, Iron County, and St. Croix County).

**Defendants**

20.     Defendant Jeffrey L. Kemp ("District Attorney Kemp") is the District Attorney for the County of Polk ("Polk County") whose principal place of business is located at 1005 W. Main St., Suite 700, Balsam Lake, Wisconsin 54810. District Attorney Kemp is authorized and obligated pursuant to Wis. Stat. § 978.05 ("Duties of the district attorney") to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

21.     Defendant Charles Simono ("District Attorney Simono") is the District Attorney for the County of Forest ("Forest County") whose principal place of business is located at 200 E. Madison Ave., Crandon, Wisconsin 54520.  District Attorney Simono is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

22.     Defendant Mark Fruehauf ("District Attorney Fruehauf") is the District Attorney for the County of Douglas ("Douglas County") whose principal place of business is located at 1313 Belknap St., Room 201, Superior, Wisconsin 54480. District Attorney Fruehauf is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

23.     Defendant Angeline E. Winton ("District Attorney Winton") is the District Attorney for the County of Washburn ("Washburn County") whose principal place of business is located at 10 4th Avenue, Shell Lake, Wisconsin 54871.  District Attorney Winton is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. She is named in her official capacity.

24.     Defendant Kimberly Lawton ("District Attorney Lawton") is the District Attorney for the County of Bayfield ("Bayfield County") whose principal place of business is located at 117 E. Fifth St., Washburn, Wisconsin 54891. District Attorney Lawton is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. She is named in her official capacity.

25.     Defendant Kelly McKnight ("District Attorney McKnight") is the District Attorney for the County of Ashland ("Ashland County") whose principal place of business is located at 201 Main St. West, Room 301, Ashland, Wisconsin 54806.  District Attorney McKnight is authorized

and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

26.     Defendant Martha Milanowski ("District Attorney Milanowski") is the District Attorney for the County of Vilas ("Vilas County") whose principal place of business is located at 330 Court St., Eagle River, Wisconsin 54521.  District Attorney Milanowski is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. She is named in her official capacity.

27.     Defendant William Norine ("District Attorney Norine") is the District Attorney for the County of Burnett ("Burnett County") whose principal place of business is located at 7410 County Road K, Suite 113, Siren, Wisconsin 54872.  District Attorney Norine is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

28.     Defendant Angela L. Beranek ("District Attorney Beranek") is the District Attorney for the County of Barron ("Barron County") whose principal place of business is located at 1420 State Highway 25 North, Room 2301, Barron, Wisconsin 54812.  District Attorney Beranek is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. She is named in her official capacity.

29.     Defendant Bruce R. Poquette ("District Attorney Poquette") is the District Attorney for the County of Sawyer ("Sawyer County") whose principal place of business is located at 10610 Main St., Suite 105, Hayward, Wisconsin 54843.  District Attorney Poquette is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

30.     Defendant Matthew Tingstad ("District Attorney Tingstad") is the District Attorney for the County of Iron ("Iron County") whose principal place of business is located at 300 Taconite St., Hurley, Wisconsin 54534.  District Attorney Tingstad is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

31.     Defendant Michael E. Nieskes ("District Attorney Nieskes") is the District Attorney for the County of St. Croix ("St. Croix County") whose principal place of business is located at 1101 Carmichael Rd., Room 2301, Hudson, Wisconsin 54016.  District Attorney Nieskes is authorized and obligated pursuant to Wis. Stat. § 978.05 to prosecute violations of Wis. Stat. § 29.083. He is named in his official capacity.

32.     Defendant Scott K. Walker ("Governor Walker") is the elected Governor of Wisconsin whose authority is conferred by Wis. Stat. § 14.01 and Article V of the Wisconsin Constitution. As Governor, Mr. Walker is obligated to ensure that the laws of the State are carried out. Mr. Walker signed Wis. Stat. § 29.083, as amended, into law on April 4, 2016.  He is named in his official capacity.

33.     Defendant Brad D. Schimel ("Mr. Schimel") is the elected Attorney General of Wisconsin whose duties and authority are conferred by Chapter 165 of the Wisconsin Statutes. As such, Mr. Schimel oversees the enforcement of the State's criminal statutes. Mr. Schimel is named in his official capacity.

34.     Defendant Cathy L. Stepp ("Ms. Stepp") is Secretary of the Wisconsin Department of Natural Resources ("WDNR"), which enforces Wis. Stat. § 29.083.  She is named in her official capacity.

35.     Defendant Todd A. Schaller is Chief Warden of the WDNR, which enforces Wis. Stat. § 29.083.  He is named in his official capacity.

## FACTUAL BACKGROUND

### Statutory Overview

36.     Wis. Stat. § 29.083 was amended in 2016 to greatly amplify protection of hunter privacy on public lands. As currently enacted, the statute prohibits a wide range of conduct, including: (1) disturbing a lawfully placed hunting stand (Wis. Stat. § 29.083(2)(a)(5)); (2) disturbing lawfully placed bait (Wis. Stat. § 29.083(2)(a)(6)); (3) using a drone in specified circumstances (Wis. Stat. § 29.083(2)(a)(8)); and (4) engaging in a series of two or more acts carried out over time, however short or long, that show a continuity of purpose and that are intended to impede or obstruct a person who is engaged in lawful hunting, fishing, or trapping, or an activity associated with lawful hunting, fishing, or trapping, including any of the following: **maintaining a visual or physical proximity to the person** (Wis. Stat. § 29.083(2)(a)(7)(a)); **approaching or confronting the person** (*id.* at (7)(b)); **photographing, videotaping, audiotaping, or through other electronic means, monitoring, or recording the activities of the person, regardless of where the act occurs** (*id.* at (7)(c)); and **causing a person to engage in any of these acts** (*id.* at (7)(d)).

### Legislative History

37.     The original version of the statute went into effect on April 13, 1990, codified as Wis. Stat. § 29.223 ("Interference with hunting, fishing or trapping").

38.     Wis. Stat. § 29.223 was renumbered by 1997 Act 248, and became Wis. Stat. § 29.083.  Since it went into effect in 1990, the statute has prohibited interference with, or attempts to interfere with, "lawful hunting, fishing, or trapping," as well as "impeding or obstructing a person who is engaged in an activity associated with lawful hunting, fishing or trapping."

11

39.     In 2016, Wis. Stat. § 29.083 was amended to significantly increase the privacy protections afforded to hunters on public lands. During Senate hearings on the proposed amendments, Senator Terry Moulton ("Senator Moulton"), a principal sponsor of the amendment, conceded it was *already* "illegal to interfere with lawful hunting, fishing and trapping." (10/28/15 Testimony on Senate Bill 338, pg. 1.) Yet he argued the expanded privacy protections were necessary because "it can be difficult for local law enforcement to enforce these laws."  (*Id*.)  In so testifying, Senator Moulton did not explain how expanding the range of prohibited behaviors would assist law enforcement in preventing the behaviors that were already illegal.

40.     Testimony from Al Lobner ("Mr. Lobner"), the President of the Wisconsin Bear Hunters Association, spoke similarly of the need for the new law. In his testimony before the Senate Sporting Heritage, Mining, and Forestry Committee, Mr. Lobner likened the monitoring of hunters to "that of the paparazzi and the Hollywood types." (*Id*.) Yet such activity is squarely protected under the First Amendment.

41.     Representative Adam Jarchow ("Representative Jarchow"), a lead sponsor of the legislation in the Wisconsin Assembly, also provided testimony in support of the legislation. (Testimony of Rep. Adam Jarchow before the Wis. Senate Committee on Sporting Heritage, on SB 338, at 1 (Oct. 28, 2015) ["Rep. Jarchow Testimony"].)  Citing the rise of "new technology" (presumably referring to audiovisual technology, such as digital cameras and drones), Representative Jarchow advocated that "it was time to strengthen the law." (*Id*.)  He explained that the amended law would give local law enforcement "the tools they need to do their jobs" and would address the concern that "the current law is not strong enough."  (*Id*.) However, like Senator Moulton, Representative Jarchow failed to explain how expanding prohibitions to include

audiovisual recording or "maintaining a visual or physical proximity to" hunters would give local law enforcement "the tools they need to do their jobs." (*Id.*)

42.    Jodi Habush Sinykin ("Ms. Habush Sinykin") testified against the legislation as a representative of Midwest Environmental Advocates.  She raised the concern that the proposed amendment constituted an "unconstitutional constraint[] on freedoms" and opined that the "freedom to observe and photograph activities taking place on public lands" would be infringed by the legislation. (Habush Sinykin Testimony, pg. 1.)  Ms. Habush Sinykin testified that the statute would criminalize "maintaining a visual . . . proximity" no matter how "short or long," which undermines the rights of all citizens to share in public space.  (*Id.*)  She further raised concerns about the chilling effect the law would have on the "Tipline" operated by the WDNR, which relies upon citizens' observations, photographs, and videos to identify, document, and report illegal hunting practices.  (*Id.*)  By itself, this effect undermines the right of the people to petition the government.

43.    Even **proponents** of the legislation cautioned the Wisconsin Legislature about the potential infringement of the constitutional rights of those seeking to monitor hunters. In his October 28, 2015 testimony before the Senate Committee on Sporting Heritage, Mining and Forestry, George Borchert ("Mr. Borchert") of the Wisconsin Wildlife Federation spoke in favor of the bill "to the extent it does not interfere with the Constitutional rights of other users of public lands." (10/28/15 Borchert Testimony, pg. 1.)  He specifically asked the committee "to be careful before prohibiting someone from being in visual proximity or taking photos of someone hunting, fishing or trapping."  (*Id.*)

**Passage and Penalties**

44.     Despite the First Amendment concerns expressed during the debate, the legislation passed in both chambers of the Wisconsin Legislature and was presented to Governor Walker for signature. On April 2, 2016, Governor Walker signed 2015 Wisconsin Act 346 into law at the Wisconsin Bear Hunters' Association 52nd Annual Convention. The publicity around its signing, which included a press release trumpeting the law's purpose, suggests Governor Walker's sincere intent that the law be enforced and insinuates the law is higher-priority than others. The updated law, codified at Wis. Stat. § 29.083, became effective two days later, on April 4, 2016.

45.     Attached to this Complaint as **Exhibit A** is a true and correct copy of the full text of Wis. Stat. § 29.083 as currently adopted by the Wisconsin Legislature. It is this version of Wis. Stat. § 29.083 that Plaintiffs challenge in this action.

46.     A violation of the statute is now punishable by both civil and criminal penalties. Additionally, a hunter who is adversely affected by conduct in violation of the statute may bring an action for an injunction, damages, or both. (Wis. Stat. § 29.083(4)(A).)

47.     In addition, the 2016 amendment created new penalties for repeat violations of the statute.   The associated penalty statute provides that first violations shall be punished by a maximum fine of $500. (Wis. Stat. § 29.971(11r)(a).) For a second violation of the statute within five years, the statutory penalty increases to a maximum fine of $1,000, or imprisonment up to 90 days, or both. (Wis. Stat. § 29.971(11r)(am)(1).)  For a third violation within five years, the penalty escalates to a maximum fine of $10,000, or imprisonment up to 9 months, or both. (Wis. Stat. § 29.971(11r)(am)(2).)

**Plaintiffs' Experiences with the Challenged Statute**

**Professor Brown**

48.     Professor Brown is an academic who teaches film production and is a working documentarian.  He is employed in a tenure track position and is expected to publish creative work, such as fiction films and documentaries, and to establish a research agenda on which to focus his work.  Professor Brown has a long history in environmental media. In 2014, he set out to document the annual Wisconsin wolf hunt in order to produce a feature-length documentary about the pros and cons of hunting wolves in Wisconsin.

49.     In his research, Professor Brown learned about Wolf Patrol and its stated goal of documenting cruel hunting practices through photography and video recording. Owing to the similarity of interests, he chose in 2014 to embed himself as a documentarian with members of Wolf Patrol.  Since then, Professor Brown has amassed over 300 hours of documentary footage of wolf, coyote, and bear hunting activities in Wisconsin, Minnesota, Michigan, Montana, Idaho, and Wyoming.  Through his work, Professor Brown has obtained significant knowledge about hunting practices and Wolf Patrol's publicly important work. Professor Brown is actively working on a feature film, which he intends to screen on the film festival circuit when it is finished. His goal is to premiere the film at high-profile events such as Sundance, Tribeca, or SXSW and then to distribute it to various international and regional film festivals.

50.     Wis. Stat. § 29.083, as amended in 2016, was enacted specifically to chill the activities of Wolf Patrol and similar activist groups. (*See* Rep. Jarchow Testimony.)  The stated goal of Wolf Patrol is to monitor hunters and trappers with photographic and video equipment and also to use that documentation to educate the public on hunting issues.  Professor Brown shares in that goal and provides audiovisual expertise in furtherance thereof.   Wolf Patrol researches problem areas in Wisconsin where there is a prevalence of poaching, conflicts between hunting dogs and wolves, and livestock predation. Wolf Patrol accomplishes this by analyzing public data

15

produced by the WDNR and attending WDNR-run informational meetings on the issue. Wolf Patrol activists, often accompanied by Professor Brown, then travel to the so-called "Wolf Caution Areas" (a term coined by WDNR officials).

51.     More than 90 percent of Wolf Patrol's activities (and those of Professor Brown) involve driving on publicly owned county and Forest Service roads in county, state, and national forest areas. On a typical day, Professor Brown and Wolf Patrol activists log hundreds of miles, often 14 hours at a time. The goal is to search for hunters violating hunting laws and to document hunting activity.

52.     Many times before and after the April 4, 2016 enactment of amended Wis. Stat. § 29.083, Professor Brown has personally witnessed verbal altercations between hunters and members of Wolf Patrol.  Multiple times Professor Brown has been in a car when it was pulled over by law enforcement officers, who have asked about the purpose of Wolf Patrol's making multiple passes through forested areas in Northern Wisconsin.

53.     In July 2015, Professor Brown accompanied Wolf Patrol activists, including Plaintiff Losse, during their monitoring of hound hunters in Polk County.  There had been reports of hunting dogs being killed by wolves. After several days of filming, Professor Brown returned to Milwaukee. Upon arriving home, he learned that several Wolf Patrol members, including Plaintiff Losse, had been issued citations for violating the statute then in effect for monitoring hunter activity. They were told to report to the Polk County Clerk's Office the next day to collect their citations. Professor Brown returned to Polk County (a five-hour drive from his home) to be present when the Wolf Patrol members appeared at the clerk's office the following day. But when they got there, Polk County had no citations to issue, and the Wolf Patrol participants left of their

own accord. The threat of citation was a tactic used by law enforcement to intimidate Wolf Patrol members and to put a stop to their expressive activity, namely taking photos and video of hunters.

54.     On September 11, 2015, Professor Brown and members of Wolf Patrol were monitoring activities in the Chequamegon-Nicolet National Forest outside of Washburn, Wisconsin. While parked on a spur road leading to a gated campground, Professor Brown and Wolf Patrol activist Rod Coronado ("Mr. Coronado") were blocked by a group of hunters, one of whom represented himself as an "officer of the law." The hunters used their own vehicles to prohibit Professor Brown and Mr. Coronado from passing. For 45 minutes, Professor Brown and Mr. Coronado were "detained" by the hunters, after which time they were finally allowed to pass.

55.     The following day, on September 12, 2015, Professor Brown, Mr. Coronado, and other members of Wolf Patrol were accosted by a group of approximately 20 hunters in the same part of the Chequamegon-Nicolet National Forest in Bayfield County, Wisconsin. One of the hunters criticized Mr. Coronado for posting videos of hunters on YouTube. (Professor Brown later was able to identify one of the hunters in the group of 20 as having been part of the group that had impeded their movement the day before.) The hunters claimed they had called the police, and Professor Brown and the Wolf Patrol members on the scene agreed to remain there to discuss the matter with law enforcement.  An hour later, three police cars arrived and the investigating officer questioned Professor Brown and the Wolf Patrol members for over an hour. The investigating officer dedicated most of the "interview" to explaining the hunters' concerns and to getting information about the Wolf Patrol members' activities.

56.     On September 17, 2016, after the expanded prohibitions in Wis. Stat. § 29.083 became effective, Professor Brown and members of Wolf Patrol were stopped by a federal law enforcement officer believed to be part of the U.S. Forest Service. For 20 minutes, Professor

Brown and his colleagues amicably spoke to the officer who suggested that he, too, was "trying to catch the bad guys." Since that incident, Professor Brown has concluded that state law enforcement officers appear more willing to enforce Wis. Stat. § 29.083 than their federal counterparts. Given this perception, Professor Brown has restricted his embedded work with Wolf Patrol to federally managed lands, to minimize the possibility of being cited or arrested for a perceived violation of the law. This narrowing of the geographic scope of Professor Brown's filming is the direct result of the law's unconstitutional chilling effect.

57.     On February 11, 2017, Professor Brown, Ms. Losse, and certain other members of Wolf Patrol were monitoring hunting activities near Argonne, Wisconsin, on State Highway 55. As they drove, the truck in which Professor Brown and Ms. Losse were traveling was approached by an unnamed hunter. The hunter was irate, used foul language, and claimed that the Wolf Patrol members were interfering with his hunt. On a number of occasions, the hunter inquired why Professor Brown was filming. Professor Brown, for his part, ignored the hunter, who then aggressively exclaimed that "harassing hunters is illegal" and "you cannot legally videotape a hunt in Wisconsin right now."

58.     Because of Wis. Stat. § 29.083, Professor Brown now films hunters only from public roads and does not follow them into the woods, even though his First Amendment rights extend onto those public lands. He further limits his filming and documentary activity to roads on *federally*-managed lands only (as opposed to state-managed public lands), where he perceives a lesser likelihood of encountering state law-enforcement officers who may try to cite him for violating the statute.

59.     Wis. Stat. § 29.083 has had a chilling effect on Professor Brown's work as a documentary filmmaker. The fact that he cannot "maintain . . . a visual or physical proximity to

18

the person" engaged in the hunting activity without risking arrest unlawfully restricts his ability to document such activities on public lands. The statute's prohibition of Professor Brown's "photographing, videotaping, audiotaping, or through other electronic means, monitoring, or recording the activities" of a hunter (no matter where the hunting activity occurs) wholly undermines his research. Similarly, the statute frustrates Professor Brown's work based on the prohibition against using video-equipped drones in various instances critical to his work. All of this is particularly true because Professor Brown faces the potential for arrest even in the absence of the requisite mens rea.

60.     Because he may be arrested while collecting footage for his film, Professor Brown is directly and manifestly injured by the law's enactment. He will be unable to complete his film as envisioned, given the statute's adverse impact on his ability to collect photographic and video footage on public land. The limits imposed by the statute threaten to cost him three years of work and approximately $50,000 of his own money used to produce the film. In addition, if he cannot complete his work without facing the civil and criminal penalties set forth in Wis. Stat. § 29.083 and § 29.971(11r), Professor Brown will not accomplish his research goal of informing the public about the potential abuse of wildlife on public lands.

61.     Professor Brown is also injured because the threat of enforcement of the statute could materially harm his career at Marquette University and pursuit of tenure. An arrest could be deemed a breach of his employment contract with the university. In addition, in order to qualify for tenure, Professor Brown has six years to complete the equivalent of seven short films. If the Wolf Patrol film he is working on is frozen in its tracks, Professor Brown likely will run out of time to complete the tenure requirements imposed upon him. The law, then, has the effect of directly harming Professor Brown's prospects for promotion.

62.     Professor Brown is also concerned that an arrest for violation of Wis. Stat. § 29.083 will render him unable to meet his teaching obligations at Marquette and result in his termination and/or poor reviews from students who count on him to be present.

63.     The impact of an arrest on his family life (he has a wife and 4-year-old daughter) also weighs on his continued involvement in making the film given the statute's recently added prohibitions on filming.

64.     In light of the foregoing, Professor Brown is unconstitutionally chilled from making recordings of hunters in the public woods and on state-patrolled public roads. In addition, he continues to face a threat of prosecution under the statute's unconstitutional provisions for the limited recording he still chooses to engage in.

**Louis Weisberg**

65.     Promotion of animal welfare and wildlife conservation is one of Mr. Weisberg's core interests.

66.     Through his position at the *Wisconsin Gazette*, Mr. Weisberg has published countless articles on issues about wolves and hunting in Wisconsin. In fact, many animal activist groups consider the *Wisconsin Gazette* to be their go-to publication for coverage of pertinent animal-related issues, especially those relating to wolves and other wild fauna.  In recent years, Mr. Weisberg has published over a dozen articles in the *Wisconsin Gazette* about the hunting and poaching of wolves and their delisting from protected status in the Midwest.

67.     In addition to wolf protection, Mr. Weisberg has published on other hunting-related issues plaguing the state, such as coyote-killing contests, the lifting of hunting restrictions on previously protected species, and even WDNR's chronic underreporting of poaching, an issue that makes the work of groups like Wolf Patrol all the more crucial.

68.     Mr. Weisberg even reported on the very legislation that is now the subject of this lawsuit. In late 2015, when Senate Bill 338 began making its way through the Wisconsin Legislature, Mr. Weisberg tried to alert the public to its disastrous repercussions for wildlife and their advocates—including Wolf Patrol.

69.     With the expanded prohibitions of Wis. Stat. § 29.083 now in effect, Mr. Weisberg finds himself unconstitutionally restricted as a journalist and wildlife advocate in the very ways he feared he would be.

70.     Most crucially, Wis. Stat. § 29.083 curtails Mr. Weisberg's freedoms of speech and press. In order to fulfill his and the *Wisconsin Gazette*'s mission to advocate for wildlife and act as a proponent of the First Amendment, Mr. Weisberg depends on the free flow of information: from Wisconsin's north woods, to his desk at the *Wisconsin Gazette*, and ultimately to his readers. At 66 years old, Mr. Weisberg is unable to patrol public lands himself and thus relies on others to document the activities of hunters so that he may publish on this important topic, including on the work of Wolf Patrol. If his sources are not allowed to witness the activities of hunters (Wis. Stat. § 29.083(2)(7)(a)), or to photograph or videotape them (Wis. Stat. §§ 29.083(2)(7)(c), 29.083(2)(8)), then Mr. Weisberg cannot report on them. In fact, Mr. Weisberg would himself be liable under the law for simply hiring a freelancer to document hunting activity. Specifically, Wis. Stat. § 29.083(2)(7)(d) prohibits people like Mr. Weisberg from even "[c]ausing a person to engage in" "[m]aintaining a visual or physical proximity" to a hunter, "[a]pproaching" a hunter, or "[p]hotographing, videotaping, audiotaping, or through other electronic means, monitoring or recording the activities of" a hunter.) The result is a total news blackout on a matter of significant public concern.

71.     Mr. Weisberg wishes to continue actively looking for stories to publish on hunting and wildlife matters in Wisconsin. He is particularly interested in obtaining information that pertains to the delisting of the wolf in Midwest states. He also wishes to pursue tips regarding illegal bear hunts in the state, particularly in southern Wisconsin.

72.     Mr. Weisberg has a personal and professional interest in publishing stories based on information that is now illegal to obtain under Wis. Stat. § 29.083. He cannot report on poaching or other related hunting practices using primary sources of information. In short, he is currently chilled from effectively reporting on matters of public concern because the statute makes it illegal to collect the documentation needed.

### Stephanie Losse

73.     Ms. Losse is a volunteer for Wolf Patrol who participates in monitoring hunters via peaceful observation, photography, and recording activities. Ms. Losse was present in the car in July 2015 when she and her colleagues were pulled over and told that they would be cited under the then-existing version of Wis. Stat. § 29.083. As detailed above, when Ms. Losse appeared at the Polk County Clerk's Office to pick up her non-existent citation the next day, she came to understand Polk County law enforcement had falsely told her she had been cited simply to scare her and deter her from further monitoring hunters. In fact, after the passing of the 2016 amendments, Ms. Losse learned that one of the hunters who had called the police on her and her colleagues that day in 2015 had testified, during the legislative hearings on the amendment, that Wolf Patrol's conduct had not actually impeded or interfered with their hunt that day.

74.     In July 2015, there was no law on the books in Wisconsin that expressly made monitoring of hunters illegal, so there was in fact nothing for the Polk County sheriff's deputy to

cite Ms. Losse for that summer. This changed in April 2016, with the enactment of the 2016 amendments to Wis. Stat. § 29.083.

75.     Wis. Stat. § 29.083, as amended, now puts Ms. Losse at real risk of arrest and prosecution for her volunteer Wolf Patrol activities.  Her goal as a Wolf Patrol volunteer is to document abuse of wildlife in Wisconsin through photography and similar media, then using those photographs and recordings to educate the public about hunter activity. But now, even "maintaining a visual proximity" to a hunter on public lands puts Ms. Losse at risk of civil or criminal penalties.

76.     The summer of 2017 is like all summers in Wisconsin: hunters have commenced hound training. This is often when clashes occur between the native wolf populations and the hound dogs. Ms. Losse and her colleagues believe it is at best irresponsible to put dogs and wolves together in this situation (if not a violation of Wisconsin's law against animal mistreatment), and for that reason she wishes to monitor the training. But Ms. Losse faces serious repercussions under Wis. Stat. § 29.083 for doing so. Her ability to freely engage in protected expression and assemble on public land is at risk unless and until the unlawful prohibitions of the statute are declared unconstitutional.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment**
**42 U.S.C. § 1983**

77.     Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as if set forth in full.

78.     An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs contend that the challenged statute is unconstitutional.  Defendants believe the statute is constitutional.   Plaintiffs are under an immediate threat of being arrested or penalized for

exercising their fundamental rights to assemble on public land, to observe and create documentation of what happens there, and to speak freely about and disseminate their observations.

79.     Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

**SECOND CLAIM FOR RELIEF**
**First Amendment (Overbreadth)**
**42 U.S.C. § 1983**

80.     Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as if set forth in full.

81.     The act of image capture—the recording of images or sound—is not only a necessary predicate to certain speech, it is speech itself.  In any event, there is no constitutionally permissible basis for separating an act of creating pure speech (recording) from the act of pure speech itself (disseminating or publishing a recording).  Protecting the right to record is a necessary corollary of protecting the right to edit, view, and broadcast film.

82.     A statute, such as Wis. Stat. § 29.083, that prohibits substantially more speech than the First Amendment permits is unconstitutionally overbroad, even though the State might lawfully punish some of the conduct targeted by the statute. *See United States v. Stevens*, 559 U.S. 460, 472-73 (2010).

83.     Even if the State may be able to lawfully limit the creation of certain recordings on public lands, Wis. Stat. § 29.083 regulates substantially more speech than the First Amendment permits.

84.     Specifically, the statute targets a wide range of political speech, including speech regarding animal welfare, environmentalism, and speech reporting on conduct by hunters.

85.     Wis. Stat. § 29.083 criminalizes not just the protected speech of Plaintiffs, but of *any* person or group that would "maintain[] a visual or physical proximity to" a hunter, "[p]hotograph[], videotap[e], audiotap[e], or through other electronic means, monitor[] or record[] the activities of" a hunter, or even merely "approach[]" a hunter.[1] Wis. Stat. § 29.083(2)(a)(7)(a)–(c). Such affected groups include journalists, hikers, nature photographers, or any person merely concerned about the conditions under which hunting takes place.

86.     In fact, even a proponent of the bill, the Wisconsin Wildlife Federation, recognized the constitutional infirmities of the recent amendments to the statute.  In public testimony on the proposed amendment, the President of the Wisconsin Wildlife Federation stated as follows: "[T]he Federation is supportive of SB 388 to the extent that it does not interfere with the Constitutional rights of other users of public lands.  So we would ask the Committee to be careful before prohibiting someone from being in visual proximity or taking photos of someone hunting, fishing or trapping unless those actions are done in a manner that cause actual interference with hunting, fishing or trapping.  In fact, prohibiting photography would prevent even sportsmen and women from taking pictures of illegal activities and presenting them to their conservation warden." (10/28/15 Borchert Testimony, pg. 1.)

87.     To be sure, the law also sweeps within its reach activities by environmentalist groups who seek to investigate and expose hunting practices that adversely impact non-hunted species—including hunting practices that may be illegal. In this way, Wis. Stat. § 29.083 also unconstitutionally infringes upon Plaintiffs' First Amendment right to petition the State for a redress of grievances—such as the State's insufficient enforcement of hunting and conservation laws, and against objectionable yet lawful hunting practices such as use of inhumane traps and

---

[1] Such a prohibition also unconstitutionally inhibits freedom of assembly on public land.

killing of particular species—by criminalizing a substantially overbroad range of recording activities, including essential citizen-monitoring activities. (The Wisconsin Legislature itself has previously recognized the necessity of citizen-monitoring of hunters. *See* Wis. Stat. § 23.38 (mandating WDNR to maintain and publicize a hotline number to receive reports from citizen informants of violations of any natural resources statute or administrative rule).)

88. Because Wis. Stat. § 29.083 categorizes so much protected activity as "criminal," it is unconstitutionally overbroad.

89. Because Wis. Stat. § 29.083 is unconstitutionally overbroad, so too is it unconstitutional in its prohibition on "[c]ausing a person to engage in any of the acts described . . . ." Wis. Stat. § 29.083(2)(a)(7)(d). To the extent "the acts described" are constitutionally protected or otherwise lawful, the statute is overbroad in its prohibition on "[c]ausing" those acts.

90. Because Wis. Stat. § 29.083 is unconstitutionally overbroad, so too is it unconstitutional in its prohibition on "[u]sing a drone … to conduct any activity prohibited under [the statute]." Wis. Stat. § 29.083(2)(a)(8). To the extent "any activity prohibited under [the statute]" is in fact constitutionally protected or otherwise lawful, the statute is overbroad in its prohibition on "[u]sing a drone … to conduct [that] activity."

91. Plaintiffs are entitled to prospective injunctive relief enjoining Defendants from enforcing Wis. Stat. § 29.083—specifically Wis. Stat. §§ 29.083(2)(a)(7)–(8). Plaintiffs are further entitled to declaratory relief in the form of a ruling that these provisions are unconstitutionally overbroad and unenforceable in any situation.

## THIRD CLAIM FOR RELIEF
### First and Fourteenth Amendments (Vagueness)
### 42 U.S.C. § 1983

92.      Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as if set forth in full.

93.      A law is unconstitutionally vague if a reasonable person cannot tell what speech is prohibited and what is permitted. *See Connally v. General Constr. Co.*, 269 U.S. 385 (1926).

94.      The United States Supreme Court has found laws to be void on vagueness grounds when they are so ambiguous that a reasonable person cannot tell what expression is forbidden and what is allowed. *See NAACP v. Button*, 371 U.S. 415 (1963).

95.      Wis. Stat. § 29.083 is unconstitutionally vague.

96.      Specifically, the statute does not reasonably define what "proximity" means in the context of "[m]aintaining a visual or physical proximity to the person." Wis. Stat. § 29.083(2)(a)(7)(a).

97.      The law is also unconstitutionally vague because it fails to define "[a]pproaching or confronting the person." Wis. Stat. § 29.083(2)(a)(7)(b).

98.      The law is also unconstitutionally vague in its prohibition on "[i]mpeding or obstructing" a person engaged in lawful hunting, fishing or trapping or an associated activity. Wis. Stat. § 29.083(2)(a)(2)–(3). What type of conduct constitutes "[i]mpeding or obstructing" is entirely undefined.

99.      Because Wis. Stat. § 29.083 has several unreasonably ambiguous provisions, it is unconstitutionally vague.

100.      Because Wis. Stat. § 29.083 is unconstitutionally vague, so too is it unconstitutional in its prohibition on "[c]ausing a person to engage in any of the acts described [in subdivision (2)(a)(7)(d)]." Wis. Stat. § 29.083(2)(a)(7)(d). To the extent the prohibitions on "the acts

27

described" are unconstitutionally vague, the statute is likewise vague in its prohibition on "[c]ausing" those acts.

101.    Wis. Stat. § 29.083 is also unconstitutional in its prohibition on "[u]sing a drone … to conduct any activity prohibited under under subds. 1. to 7." Wis. Stat. § 29.083(2)(a)(8). To the extent the prohibitions in subdivisions (2)(a)(1)–(7) are vague, the statute is vague in its prohibition on "[u]sing a drone … to conduct" those prohibited activities.

102.    Plaintiffs are entitled to prospective injunctive relief enjoining Defendants from enforcing Wis. Stat. § 29.083—specifically Wis. Stat. § 29.083(2)(a)(2)–(3), (2)(a)(7)(a)–(b), (2)(a)(7)(d), and (2)(a)(8).  Plaintiffs are further entitled to declaratory relief in the form of a ruling that the statute is unconstitutionally vague and unenforceable in any situation.

## FOURTH CLAIM FOR RELIEF
### First Amendment (Content and Viewpoint-Based Discrimination)
### 42 U.S.C. § 1983

103.    Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as if set forth in full.

104.    The most important function of the First Amendment is to protect against laws that target certain messages or speech because of their "ideas, subject matter, or content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95-96 (1972).

105.    "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).

106.    Wis. Stat. § 29.083 limits the ability to create images relating to particular activities: hunting, fishing, and trapping. A regulation prohibiting the recording of images or sounds of certain types of activities is content-discriminatory.

107.     Even if the speech in question is not generally protected speech—for example, if the speech in question is merely cast as harassment—the State still may not make a content-based distinction. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992).  That is to say, content-based distinctions are impermissible even for speech that is generally unprotected.

108.     By its plain text, Wis. Stat. § 29.083 is an explicit content-based regulation.  It singles out photographing, videotaping, and audiotaping of hunting, trapping, fishing, and their related activities.  Law enforcement would only know whether the law is violated by viewing the contents of the recording—that is, by determining that an individual was recording an act of hunting instead of hiking or scenery, for example.

109.     Specifically, a video recording by Professor Brown of an encounter between Rod Coronado and Deputy Hoffteder of Polk County, Wisconsin illustrates the law's singling out of videotaping of hunting, trapping and their related activities.  That video can be viewed at this site: *Wolf Patrol: WI Wildlife Issues*, https://vimeo.com/169152292.

110.     On this video, the officer explains that following hunters around and videotaping them is harassment. The officer further states that the Polk County District Attorney actually told him that "if there's an individual following [hunters] around . . . not letting the hunters do what they're wanting to do without having to watch their back from somebody filming, then we can cite them." The officer then declares that is what he is going to do—he is going to cite Ms. Losse and other members of Wolf Patrol under the statute. When Ms. Losse and her colleagues traveled to the Polk County Clerk's Office to pick up their citations the next day, there was no citation in any of their names; no citations were ever left with the clerk.

111.     In addition, the legislative history of the recent amendment to Wis. Stat. § 29.083 reveals its manifest purpose to restrict *anti*-hunting speech. Supporters of the law unabashedly

stated that the purpose of the law is to stop "extremist anti-hunters" from monitoring hunts. (Rep. Jarchow Testimony, at 1-2.)  At a public hearing before the Senate Sporting Heritage, Mining, and Forestry Committee on October 28, 2015, Representative Jarchow, said, "With all the unnecessary ruckus [caused by groups like Wolf Patrol], an entire day of hunting could be ruined by people that just don't believe in what someone else is legally doing. This is wrong and must be stopped." (*Id.* at 2.)

112.    Individuals testifying in favor of the bill said the following:

a)   Hunters should not be "scrutinized by those that do not share our values." (Testimony of Wisconsin Bear Hunters Association President Al Lobner before the Wis. Senate Committee on Sporting Heritage, pg. 1 (Oct. 28, 2015).)

b)   Hunters should not be "follow[ed] . . . through the woods with video cameras documenting LEGAL acts . . . ." (Rep. Jarchow Testimony, pg. 2) (emphasis in original).

113.    During the hearing before the Senate Committee on Sporting Heritage, Mining, and Forestry on October 28, 2015, legislators specifically singled out Wolf Patrol: "If people would respect others' rights, [this legislation] wouldn't have to be [written]. However, there is a group of extremist anti-hunters out there who seem to enjoy making hunters' lives miserable. This group[ is] known as Wolf Patrol . . . ." (Rep. Jarchow Testimony, at 1-2.)

114.    The law singles out speech critical of hunting practices and limits the ability of activists and journalists to engage in discourse on a political topic of the utmost public concern.

115.    The State has not limited the ability to engage in political speech activities in other hobbies or pastimes. For instance, there is no law specifically protecting golfers or birdwatchers

from interruptions by others that might ruin their putt or their glimpse of a rare bird. And yet the act of quietly following or recording these hobbyists is no less likely to disrupt their activities than it would disrupt a hunt.

116.    By singling out the hunting community for protection against political speech that may be critical, Wis. Stat. § 29.083 must be treated as a content- and viewpoint-based regulation. In practice, the law ensures that only one side of the debate on permissible hunting practices and wildlife conservation is raised.

117.    Wis. Stat. § 29.083, as a content- and viewpoint-based regulation that is neither justified by a compelling interest nor narrowly tailored, violates Plaintiffs' First Amendment rights.

118.    Plaintiffs are entitled to prospective injunctive relief enjoining Defendants from enforcing Wis. Stat. § 29.083—specifically Wis. Stat. §§ 29.083(2)(a)(7)–(8) — to remedy the deprivations suffered as a result of the violations of their First Amendment rights. Plaintiffs are further entitled to declaratory relief in the form of a ruling that these provisions are unconstitutionally overbroad and unenforceable in any situation.

**FIFTH CLAIM FOR RELIEF**
**First Amendment (Unlawful Time, Place, Manner Restrictions on Speech)**
**42 U.S.C. § 1983**

119.    Moreover, even if the law is content-neutral, it operates in much the same way as an unconstitutional abortion buffer-zone, like the one struck down by the U.S. Supreme Court in *McCullen v. Coakley*. (134 S. Ct. 2518, 2534–41 (2014).) *McCullen* involved a lawsuit brought by anti-abortion activists ("street counselors") challenging the constitutionality of a revised Massachusetts statute which made it a crime to knowingly stand on a public way or sidewalk within 35 feet of an entrance to any place where abortions were performed.  (*Id.*)  Pro-choice

activists applauded the law for the protection from "harassment" it afforded to abortion-seekers. However, the Supreme Court struck down that law because it imposed serious burdens on the plaintiffs' expressive activities and was not narrowly tailored to a serve significant governmental interest. As such, the law unconstitutionally violated free speech guarantees.

120.    Just as persons seeking abortions in Massachusetts wanted their privacy protected as they sought to engage in legal abortions, sporting groups in Wisconsin convinced the legislature that their hunting activities should be free from the scrutiny of journalists and activists. Whether treated as content-neutral or not, restrictions on access of this nature – "buffer-zones" – are unconstitutional. (*Id.*)

121.    Plaintiffs are entitled to prospective injunctive relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.  Plaintiffs are further entitled to declaratory relief in the form a ruling that Wis. Stat. § 29.083, specifically Wis. Stat. §§ 29.083(2)(a)(7)–(8), is unconstitutional and unenforceable in any situation.


WHEREFORE, Plaintiffs respectfully request the following relief and judgment as set forth below:

    a)    Declaring that Wis. Stat. § 29.083 violates the United States Constitution both on its face and as applied to Plaintiffs;

    b)    Preliminarily and permanently enjoining Defendants from enforcing the challenged statutory provisions as set forth in this Complaint;

    c)    Striking down the challenged statutory provisions as set forth in this Complaint;

    d)    Awarding the Plaintiffs reasonable attorneys' fees and costs; and

    e)    Awarding such further relief as the Court may deem just and proper.

Dated this 17th day of July 2017.

LAFFEY, LEITNER & GOODE LLC
*Attorneys for Plaintiffs*

By:    /s/Joseph S. Goode
         Joseph S. Goode
         State Bar No. 1020886
         Mark M. Leitner
         State Bar No. 1009459
         Jessica L. Farley
         State Bar No. 1065839
         325 E. Chicago Street
         Suite 200
         Milwaukee, WI 53202
         (414) 312-7003
         (414) 755-7089 (Facsimile)
         jgoode@llgmke.com
         mleitner@llgmke.com
         jfarley@llgmke.com

         Sarah Hanneken
         Oregon Bar No. 165104
         Animal Legal Defense Fund
         919 SW Taylor Street #400
         Portland, OR 97205
         (707) 795-2533 (ext. 1057)
         shanneken@aldf.org